THE MAYOR, ALDERMEN AND COMMONALTY OF THE CITY OF NEW YORK v. WILLIAM MASON.

The refusal by the commissioners of excise to grant any license to sell spirituous liquors in one of the wards of the city, does not operate as a license to all the residents of that ward to sell such liquors.

A person whose license has expired has not, either in virtue thereof, nor under any common right of the citizen, a right to continue to sell spirituous liquors.

The statute has made such privilege a franchise, to be exercised by those persons only who are licensed for that purpose.

The granting of licenses is a matter in the discretion of the commissioners; and their refusal even to act in the matter, would not render the selling lawful.

In an action in one of the district or justices' courts, for the penalty incurred by selling liquors without license; the averment that the defendant sold on certain days specified, and on each and every day for thirty days previous thereto, is sufficient to warrant proof of any sale within that period.

If the defendant would object that the complaint is not sufficiently explicit, he should, in conformity with § 64 of the Code, demur for that cause.

An objection, to the manner in which a jury were selected in a district court, not raised there; cannot, after going to trial and after verdict, be raised on appeal.

The Mayor, &c., of New York *v.* Mason.

The justice of a district court has no authority, upon a motion, to strike out a pleading or a defence set up in an answer.

In those courts, objections to a defence for insufficiency must be made by a demurrer.

But where the matter stricken out of an answer constitutes no defence whatever, and the court is clearly satisfied that the defendant was in no respect prejudiced, and especially where he was suffered to prove the very matters set up as such defence, and to have a ruling thereon which is at the same time brought up for review; this court will not, on the appeal, reverse the judgment for such error of the justice in granting the motion.

Jurors in the justices' courts for the several districts in this city, should be drawn in conformity with the act of 1847, (session laws, chap. 495, p. 734,) by requisition from those courts on the county clerk, and a drawing by him from the petit jury box in his office.

And the justice has no power to issue a venire and summon them from the wards composing his judicial district, as was directed by the laws of 1813 and 1820.

The objection that the jury is irregularly summoned, should be made before the jurors are sworn.

Challenge to the array must be made first in order of challenges—then challenge to the polls; and an objection to the array not made ground of challenge before the jurors are sworn, is waived.

APPEAL by the defendant from the judgment of the Third District Court, (Justice William B. Meech,) in favor of the plaintiffs. The facts and questions involved fully appear in the opinion.

*Abraham D. Russell,* for the defendant.

*John B. Haskin,* (attorney to the corporation of New York,) for the plaintiffs.

By THE COURT. WOODRUFF, J.—The present is an action brought to recover the penalty given by statute for the sale by retail of spirituous liquors, to be drank in the house of the defendant, he not being licensed according to law. (Sess. Laws of 1824, ch. 215, p. 256. Amended, see Sess. Laws of 1827, ch. 280, p. 307.)

Numerous objections to the rulings of the court below were raised on the trial, and also to the testimony received in evidence, and no less than twenty errors are alleged in

the notice of appeal as grounds of reversal. But the de-
fendant's counsel, on the argument of the appeal, urges very
few of these objections; and as to those which the counsel
appears to have abandoned, it will suffice to say, that we
think no error was committed in those particulars which
warrant a reversal of the judgment.

It is, however, proper that we should say, in order to pre-
vent misapprehension, that in our opinion the justice had no
authority to strike out one of the defences (set up by the de-
fendant in his answer) on motion. The pleadings in the dis-
trict courts are governed by § 64 of the Code of Procedure,
and a demurrer is the only proper mode of raising an objec-
tion to a defence as insufficient. Upon such a demurrer, the
court may order an amendment; and if the party neglects or
refuses to make such amendment as will render the pleadings
sufficient, the defective pleadings may be disregarded on the
trial. (Subdiv. 6 & 7.) But the justice has no authority to
entertain a motion to strike out a complaint or answer, either
in whole or part. No such authority is expressly given to
him, and he can take no such power by implication. And it
is manifest that the exercise of such a power is inconsistent
with the provisions of the subdivisions of the 64th section
above referred to. By those provisions it is made his duty
to require an amendment, when he is of opinion that the ob-
jection to the sufficiency of the complaint or answer is well
founded; and yet, by granting a motion to strike out, he vio-
lates this distinct provision. If it be said that he may, after
striking out a defence, suffer the party to amend, the answer
is, that this is not in accordance with the course of proceed-
ing prescribed for justices' courts.

But it does not follow, that in this particular case the
judgment should be reversed upon that ground. If it appear
that the matter set up as one of the defences, and so struck
out, constituted no defence at all, and was so radically in-
sufficient that no amendment could have made it a good de-
fence, then, although we deny the power of the justice to
grant the motion, and disapprove of his order striking out

the so called defence, we may, and ought to say, that no injustice was done; the erroneous order did not and could not legally affect the result, and furnishes no ground for a reversal of the judgment.

In this we by no means design to sanction the practice; on the contrary, we regard such a departure from the prescribed course of proceeding in those courts as so far erroneous, that we hesitate in overlooking the error, and we think that it must be very clear, that no injustice has been sustained in consequence, or we must reverse the judgment.

Another reason, however, exists in the present case for disregarding the error in question. All the matters averred in that part of the answer which was struck out, were given in evidence by the defendant, and became the subject of a distinct ruling upon their sufficiency as a defence, irrespective of the then state of the pleadings.

The first ground now urged by the court for the appellant embraces the very question raised by the defence so struck out, and in respect to which the evidence of the facts was afterwards received, viz., the appellant was a keeper of an inn or tavern, and, as such, was licensed to sell spirituous liquors, in the year 1853. His license expired on the first of May, 1854. He then applied for a further license, which he failed to obtain, and there was some evidence that the officers in whom the power to grant licenses for the ward or district in which the defendant resided, refused to grant any licenses whatever in that ward.

Assuming these facts, it is argued that it was a neglect of duty on the part of those officers, for which they might have been indicted, and that such neglect of duty operated as a general license to all persons whomsoever residing in the ward to keep an inn and sell such liquors, and especially to all persons citizens of the United States, possessing a good moral character, residing in such ward. And even if it did not operate as such general license, the defendant having been licensed down to the first of May, was relieved from the necessity of procuring a further license, but might continue

to sell, notwithstanding the term of his license expired, the neglect of duty by the officers aforesaid thus operating as an extension of his term.

It seems to me that the bare statement of these propositions shows their unsoundness. They seem to proceed upon a theory that the defendant and the commissioners of excise stand to each other in the relation of contracting parties, between whom the failure of performance by one relieves the other from the obligations assumed by him. That the commissioners, having refused to give the defendant a license, have no right to complain that he has no license. The effect of such reasoning is this: Commissioners, by neglecting their duty, (if a refusal to license the defendant was a neglect of duty,) may, at their pleasure, repeal or abrogate a law of the state. If the persons who, in any district, may, for the time being, be commissioners of excise, should deem it expedient to license everybody, they may practically do so by refusing to license any body; such a proposition hardly needs confutation.

The law of the state is explicit and unqualified, that every person who shall sell by retail, &c., &c., " without being licensed, according to law, shall forfeit and pay," &c. Being licensed " according to law," means licensed in the manner prescribed in the act. Now, it is not in the power of commissioners of the excise, or of any other subordinate tribunal or officers, to abrogate the statute. Its provisions may be disregarded. The commissioners may even neglect their duties, but the statute will, nevertheless, stand; and if no person is licensed, then whoever sells does so " without being licensed," and incurs the penalty. And it seems to me that the proposition, that when no one is licensed all are licensed, is too novel and extraordinary to call for discussion.

So in regard to the idea that the defendant " held over" under his former license. He had no vested right to sell spirituous liquors. The statute forbidding a sale without license, and giving to the excise commissioners authority to license such persons as they should deem fit and proper, forbids any such idea. The selection of the persons to be

The Mayor, &c., of New York v. Mason.

licensed is purely a matter of discretion. If, in one year, they thought it fit and proper to license the defendant, the experience of that year might satisfy them that they erred in their former judgment. If, in one year, they deemed it fit and proper to license twenty persons to sell, the experience of that year might satisfy them that they had erred, and that the wants of the public would only require that ten be licensed the next year. And if, in one year, they deemed it fit and proper to license persons residing in a particular ward or district, the experience of that year might satisfy them that the interests of the public would be better subserved by having no inns or taverns and retail drinking shops within that district. I think it clear that the discretion vested in the commissioners, and exercised by them in this respect, is conclusive; and to that effect is *Ex parte Parsons* (1 Hill, 655). And that the right to sell spirituous liquors, which, in the absence of any statutory provision, might be exercised by any one, has now, by statute, been converted into a franchise, and can be exercised only by those who have actually obtained a license. (See the *Overseers of Crown Point* v. *Warren*, 3 Hill, 150.) I do not perceive what application the argument of the counsel, that the refusal of the commissioners to grant any licenses for the ninth ward was a breach of duty for which they might be indicted as for a misdemeanor, has to the right of the defendant to sell without any license. This proposition was also embodied in a request that the justice below would so charge the jury. I do not deem it necessary to consider at all whether the proposition is correct or not; for, whether true or false, the sale by the defendant was none the less a sale without being licensed. (See *Rex* v. *Young*, 1 Burr. 556.) If the commissioners neglect their duty, and incur a liability to the public therefor, it will not avail the defendant. Even if their refusal to grant any license was a breach of a duty they owed to the defendant himself, he must seek his redress by a proceeding against them, and not by a violation of an express law of the state.

The argument amounts to this: By refusing to give me a

license, the commissioners neglect their duty, and, therefore, impliedly license me by their own neglect. In other words, I have a right to sell liquors in the ninth ward ; if the commissioners grant me a license, then I am authorized to sell by virtue thereof; if they refuse, then their refusal operates as a license, and I am authorized to sell because they so refuse. So that with license or without license my authority is complete ; and whether the commissioners grant me a license or not is immaterial. I am not able to appreciate the force of this sort of logic. There is no such right in the defendant to sell. The commissioners have violated no duty to him, and no court can compel them to grant him a license, (*Ex parte Parsons*, 1 Hill, 655,) or justify him in selling without such license.

It is further argued, that the court below should have granted a nonsuit when moved for, upon the ground that the plaintiffs had merely proved the fact that the defendant had sold, &c., without having also shown negatively that the defendant had no license ; that the burthen of proving this, also, was upon the plaintiffs.

If there was any foundation for this argument at the time the motion for a nonsuit was made, it is now too late to urge it ; for it appeared in the subsequent stages of the trial, from the defendant's own witnesses, that he had no license. If the defendant wished to avail himself of this supposed defect in the plaintiffs' proofs, he should have rested upon his objection, so far, at least, as not to supply the defect himself. No rule is better settled than that where a nonsuit might properly have been granted for such a defect, if either party, in the course of the trial, supplies the proof which was before wanting, the objection is obviated. It was, however, held by the Supreme Court, in *Potter et al.* v. *Deyo*, 19 Wend. 361, where this precise point was before the court, that the burthen of showing that the defendant had no license was not on the plaintiff, but on the contrary, that whether the defendant had a license or not, was a matter peculiarly within his own knowledge, and the burthen of showing that he had

a license was cast upon him by proof of the fact of a sale of the spirituous liquors. (See numerous cases there cited to support the principle.)

Another ground for reversal urged by the counsel for the appellant is, that the complaint did not specify the days upon which the alleged sales were made with sufficient precision to warrant the proof. The statement in the complaint was, that the defendant, " on the 6th, 7th, 8th and 9th days of June, and for thirty days previous to said 6th of June, and on each and every of said days, did sell by retail strong and spirituous liquors, &c., to be drunk on defendant's premises, in said city," &c.

I do not perceive in what, if any, respect the complaint is not sufficiently certain and explicit. Had the plaintiffs named each day in any other language, e. g., on Tuesday, the 9th day of May, on Wednesday, the 10th day of May, on Thursday, the 11th day of May, and so on down to the 6th day of June, the complaint would have been no more definite, explicit or certain, than to say on each and every day for thirty days previous to the said 6th day of June.

Besides, if the complaint was defective in this respect, it was a mere defect of form, only available under the general rules of pleadings formerly existing by a special demurrer, and is cured by verdict.

And still further, by the express provisions of § 64 of the Code, subdiv. 5, pleadings in the district courts are not required to be in any particular form, provided always they must be such " as to enable a person of common understanding to know what is intended." The complaint here abundantly meets that requirement; and by subdivisions 6 and 7, when a complaint is not sufficiently explicit to enable the defendant to understand it, he may demur; and if the court deem the objection well founded, it shall order an amendment. This, then, is the remedy, if the complaint be defective in the particular under consideration.

I am, therefore, clearly of the opinion, that the objection itself was groundless; and if it were otherwise, the defend-

ant cannot now avail himself of the objection, having an-swered to the merits and gone to trial without pursuing the mode pointed out by the statute to procure an amendment.

A further ground for reversal is, that the jury, by whom the cause was tried, were not summoned and empannelled according to law.

The return states that the justice " caused a venire to be issued in the manner required by law, to summon twelve per-sons named in a panel annexed thereto, being good and law-ful men of the eighth and ninth wards of the city of New York, qualified to serve as jurors, to appear," &c.

On the appearance of the jury the return states that the de-fendant's counsel challenged the array on the ground that too many jurors had been summoned. This objection being over-ruled, and six jurors being drawn to serve on the trial, the defendant's counsel objected to going to trial, on the ground that twelve jurors were necessary, according to law, to try the action. It is impossible to say which of these two objections were deemed by the counsel to be well founded, for obviously both could not be. If twelve jurors were necessary, then sum-moning twelve was not summoning too many. I conclude, how-ever, that he does not now think that there was any foundation for either objection, since, on the argument of the appeal, he neither argues that too many were summoned, nor that too few were empannelled. The act relating to these courts, passed in 1813, (2 R. L. 1813, p. 374, § 95,) prescribes the num-ber to be summoned, and fixes it at twelve, and the same sec-tion fixes six as the number who shall be empannelled to try the cause. This statute, so far as it determines the number of jurors to be summoned and the number to be drawn, has not been repealed or altered.

The return states that the defendant further objected to the jury, that they were not selected by the constable. It is sufficient to say of this objection, that neither the statute of 1813, nor any other statute, requires that the constable should make such selection. The act of 1813 requires that the justice shall nominate and insert in a panel the names of

eighteen persons, and that the venire shall direct the constable or marshal to summon any twelve of those persons to appear; and in this respect, the return states that the venire was issued in the manner required by law. And the law of 1847, which will be presently considered, in no wise imposes upon the constable the duty of selecting the jury. But this objection was not urged upon the argument of the appeal. It does not appear to have any foundation; and even if it had, it would avail nothing, according to the views expressed regarding the remaining objection, which was, that the justice had no power to issue a venire to summon a jury. The grounds of this objection do not appear by the return, but it is argued by counsel upon the appeal, that the act of 1847 (Sess. Laws, chap. 495, p. 734) has altered the law of 1813, in relation to the mode of selecting jurors for the district courts, and that jurors in those courts, as well as the other courts in this city, should, on requisition by the court, directed to the county clerk, be drawn from the petit jury box in his office, and a certificate of such drawing should be delivered by him to the officer authorized to summon jurors for those courts. Had this objection been taken by the defendant in his challenge to the array, I think it must have been deemed well taken. The statute last mentioned, in terms, requires that "the jurors hereafter to be summoned for the several courts authorized to try issues of fact" in the city of New York, shall be drawn upon requisition by such courts respectively, directed to the county clerk.

The district courts fall within this description, and all laws conflicting with the provisions of this act are expressly repealed. The manner of nomination and selection prescribed in the act of 1813, and the requirements of the act of 1820, (Sess. Laws, p. 3,) directing that the jurors for these courts shall be summoned from the wards composing the district, are therefore repealed, and the justice had therefore no authority to issue a venire for jurors selected from the particular wards composing his district. He should have made a requisition upon the county clerk for the proper number of jurors,

and the certificate of the drawing by such clerk, delivered to the constable, would be his warrant for summoning them to attend.

It is undoubtedly true, that this practice will be found in some respects inconvenient, and especially when the jurors drawn reside at a great distance from the place of trial; but since it cannot be denied that these courts are " authorized to try issues of fact," they must be deemed within the statute, and the legislature and not the courts must remedy the inconvenience, if any be found. That portion of the act of 1813, which limits the number of jurors to be ordered to eighteen, and the number to be summoned to twelve, and the number to be empannelled to six, remains unrepealed, and in the requisition to be made upon the county clerk that act is doubtless, in this respect, to be observed in each case in which a jury is demanded.

But in this particular case the objection cannot, I think, avail the defendant. The irregularity in summoning the jury was ground of challenge to the array, and should have been made in the first instance. No such ground of challenge was taken, and after the jury were empannelled and sworn, it was too late. Courts have often granted new trials, even after verdict, for similar causes, where it appeared that injustice may have been done; but where the contrary was apparent, they have no less often refused. In the present case no conscientious jury, however summoned, could have rendered any verdict more favorable to the defendant than was rendered.

Challenges are to be presented to the court in their proper order, that they may be tried and disposed of in due succession, and so that if the array be quashed, another jury may be summoned. Challenge to the array is first in order, and after that is disposed of, then the party may present his challenge to the polls; and an objection to the array, if not made a ground of challenge before the jury is sworn, is waived, and cannot afterwards be insisted upon as matter of strict right, though in courts having the power to grant new trials it may

be considered, and will be allowed to prevail to prevent injustice.

In the return the swearing of the jury is not specifically mentioned, but it is apparent, from the language of the return, not only that the array was not challenged for this cause, but that the objection was not made until after the jurors were drawn and ready for the trial. If in this particular the return is defective, the appellant should have caused it to be amended. I am aware that it may be suggested that this disposition of the question requires some strictness, in the due order of proceedings in justices' courts, but not more than is just. Indeed, I do not perceive how, after the jury are sworn, such an objection could be sustained, without involving a discontinuance. After that stage in the trial, I very much doubt the power of the justice to discharge the jury and summon another for such a reason. I conclude, therefore, that the judgment should be affirmed.

